**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| JOSEPH PAOLI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>THERAPEUTICSMD, INC., ROBERT G. FINIZIO AND BRIAN BERNICK,<br><br>Defendants. | Case No. __________<br><br><br><br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Joseph Paoli ("Plaintiff"), by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by TherapeuticsMD, Inc. ("TherapeuticsMD" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired TherapeuticsMD common stock between July 7, 2016 and April 9, 2017, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. TherapeuticsMD is a women's health care company focused on creating and commercializing products targeted exclusively for women. The Company is focused on pursuing regulatory approvals and pre-commercialization activities necessary for the commercialization of its advanced hormone therapy pharmaceutical products.

3. One of TherapeuticsMD's leading product candidates is TX-004HR. On July 7, 2016, the Company announced that it had filed its New Drug Application ("NDA") for TX-004HR with the U.S. Food and Drug Administration ("FDA"). The NDA seeks approval of TX-004HR for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar and vaginal atrophy ("VVA") due to menopause.

4. During the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading concerning the TX-004HR's NDA.

5. As the truth about the Company's deficient NDA for TX-004HR was revealed, the stock price declined common stock declined $1.50 per share from a closing price of $7.70 per share on April 10, 2017, to close at $6.20 per share on April 10, 2017, a drop of approximately 19.48%.

6. As a result of the fraudulent conduct alleged herein, Plaintiff and other members of the Class purchased TherapeuticsMD common stock at artificially inflated prices and suffered significant losses and damages once the truth emerged.

## JURISDICTION AND VENUE

7. The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants named herein, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange. Additionally, Defendants named herein, individually and collectively, have sufficient minimum contacts with this District, so as to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

## PARTIES

11. Plaintiff purchased TherapeuticsMD common stock within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto.

12. Defendant TherapeuticsMD is a Nevada corporation with its principal executive office located at 6800 Broken Sound Parkway NW, Third Floor, Boca Raton, Florida 33487. TherapeuticsMD's common stock trades on the New York Stock Exchange under the ticker symbol "TXMD."

13. Defendant Robert G. Finizio ("Finizio") is the Company's Chief Executive Officer ("CEO") and a director on the Company's board of directors. Finizio has served in these roles since October 2011.

14. Defendant Dr. Brian Bernick ("Dr. Bernick") is the Company's Chief Clinical Officer and a director on the Company's board of directors. Dr. Bernick has served as a director since October 2011 and as the Chief Clinical Officer since November 2013. Dr. Bernick also served as the Company's Chief Medical Officer from February 2012 until November 2013.

15. Defendants in Paragraphs 13-14 are collectively referred to herein as the "Individual Defendants."

16. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e) was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f) approved or ratified these statements in violation of the federal securities laws.

17. Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about TherapeuticsMD's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

18. As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

19. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of TherapeuticsMD's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

20. Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of TherapeuticsMD securities by

disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding TherapeuticsMD's business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase TherapeuticsMD common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A. COMPANY BACKGROUND

21. TherapeuticsMD is a women's health care company focused on creating and commercializing products targeted exclusively for women. The Company is focused on pursuing regulatory approvals and pre-commercialization activities necessary for the commercialization of its advanced hormone therapy pharmaceutical products.

22. One of TherapeuticsMD's leading product candidates is TX-004HR. TX-004HR is an investigational 17β-estradiol vaginal drug product candidate being studied for the treatment of VVA in postmenopausal women. TX-004HR is our applicator-free vaginal estradiol softgel drug candidate for the treatment of moderate to severe dyspareunia, a symptom of VVA in post-menopausal women with vaginal linings that do not receive enough estrogen.

23. During the third quarter of 2014, the Company initiated the REJOICE Trial, a randomized, multicenter, double-blind, placebo-controlled phase 3 clinical trial to assess the safety and efficacy of three doses — 25 mcg, 10 mcg and 4 mcg (compared to placebo) — of TX-004HR for the treatment of moderate to severe dyspareunia.

24. In December 2015, the Company completed the REJOICE Trial.

## B. MATERIAL MISSTATEMENTS AND OMISSIONS DURING THE CLASS PERIOD

25. The Class Period begins on July 7, 2016, when TherapeuticsMD issued a press release ("July 7, 2016 Press Release"), also attached as exhibit 99.1 to the Form 8-K filed with the SEC, announcing the Company filed its NDA for TX-004HR for the proposed treatment of moderate to serve dyspareunia. The July 7, 2016 Press Release press release stated in relevant part:

> **TherapeuticsMD Announces New Drug Application Submission for Yuvvexy™ (TX-004HR)**
>
> BOCA RATON, Fla., July 7, 2016 – TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, announced today that it has submitted its New Drug Application (NDA) for Yuvvexy with the U.S. Food and Drug Administration (FDA). ***The NDA submission is supported by the complete Yuvvexy clinical program, including positive results of the recently completed phase 3 Rejoice Trial.*** The NDA submission includes all three doses of Yuvvexy (4 mcg, 10 mcg and 25 mcg) that were evaluated in the Rejoice Trial.
>
> Yuvvexy, the conditionally-approved trade name for the company's TX-004HR drug candidate, is an applicator-free, vaginal, estradiol softgel capsule being proposed for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar and vaginal atrophy (VVA) due to menopause.

Emphasis added.

26. On August 4, 2016, TherapeuticsMD issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's second quarter 2016 fiscal results for the period ended June 30, 2016 ("August 4, 2016 Press Release"). The August 4, 2016 Form Press Release stated, in relevant part:

> **TherapeuticsMD Announces Second Quarter 2016 Financial Results**
>
> *- New Drug Application submitted for Yuvvexy™ (TX-004HR) -*
>
> *- Topline phase 3 data for TX-001HR Replenish Trial on track for fourth quarter of 2016 -*

> **BOCA RATON, Fla. – August 4, 2016** – TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, today announced its second quarter financial results for the quarter ended June 30, 2016.
>
> **Second Quarter and Recent Developments**
>
> - Submitted a New Drug Application (NDA) with the U.S. Food and Drug Administration for Yuvvexy, the conditionally approved trade name for TX-004HR, the company's applicator-free vaginal estradiol softgel drug candidate for the treatment of moderate- to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar and vaginal atrophy (VVA) due to menopause. The NDA is supported by the complete Yuvvexy clinical program, including positive results of the recently completed phase 3 Rejoice Trial. The submission included all three doses of Yuvvexy (4 mcg, 10 mcg and 25 mcg) that were evaluated in the Rejoice Trial
>
>   . . .
>
> "***The second quarter was transformative for our company, with the submission of our NDA for Yuvvexy as a highly-differentiated potential treatment for moderate to severe dyspareunia, a symptom of VVA, due to menopause," said TherapeuticsMD CEO Robert G. Finizio. "The Yuvvexy NDA reflects a significant corporate achievement*** and we are thankful for the contributions of everyone involved. As we prepare for future commercialization of Yuvvexy, if approved, we also look forward to the topline data in the fourth quarter of 2016 from our Replenish Trial for TX-001HR, our second novel hormone therapy program. If approved, we believe TX-001HR would be the first and only FDA-approved bio-identical combination of estradiol and progesterone for treatment of moderate-to-severe vasomotor symptoms due to menopause. We are very pleased with our progress this year."

Emphasis added.

27. On August 4, 2016, the Company filed its Form 10-Q with the SEC for the period ended June 30, 2016 ("2Q2016 Form 10-Q"). The 2Q2016 Form 10-Q reiterated Defendants' statements concerning the submission of the NDA for TX-004HR and further stated, in part:

> We submitted the New Drug Application, or NDA, for TX-004HR with the U.S. Food and Drug Administration, or FDA, on July 7, 2016. ***The NDA submission was supported by the complete TX-004HR clinical program, including positive results of the recently completed phase 3 REJOICE Trial.*** The NDA submission included all three doses of TX-004HR (4 mcg, 10 mcg and 25 mcg) that were evaluated in the REJOICE Trial. Once submitted, the FDA has a 60-day filing

> review period to determine whether the NDA is sufficiently complete to permit the FDA to accept the NDA for filing.

Emphasis added.

28. The 2Q2016 Form 10-Q was signed by Defendant Finizio and also contained a certification pursuant to the Sarbanes Oxley Act of 2002 ("SOX") signed by him stating that all fraud by the Company's management had been disclosed.

29. Also, on August 4, 2016, the Company held an earnings conference call with analysts to discuss the financial results of the second fiscal quarter of 2016 ("August 4, 2016 Conference Call"). In relevant part, Defendant Finizio stated:

> On July 7, we submitted our new drug application for Yuvvexy, the conditionally approved trade name for TX-004HR, reflecting a major achievement for our company. ***The NDA is based upon the robust results of our clinical program, including our positive pivotal Phase III Rejoice Trial***. Yuvvexy has many differentiating features that if approved enable it to potentially become a best-in-class treatment for postmenopausal women suffering from moderate to severe dyspareunia, associated with vulvovaginal atrophy or I'll refer as to VVA.

Emphasis added.

30. During the August 4, 2016 Conference Call, Defendant Dr. Bernick, the Company's Chief Clinical Officer, reiterated Defendant Finizio's statements. In relevant part, Dr. Bernick stated:

> Our NDA for Yuvvexy was officially submitted on July 7, and we expect the 10-month review process for FDA guidelines. ***Our NDA is anchored on the robust results of our full clinical program designed in accordance with current FDA guidelines.*** This 505(b)(2) submission includes all three doses of Yuvvexy 4-microgram, 10-microgram, and 25-microgram that were evaluated in the Rejoice Trial. We have also proposed new modified labeling for Yuvvexy including remove of the black-box warning, and we look forward to the FDA's feedback.

Emphasis added.

31. On September 19, 2016, TherapeuticsMD issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC ("September 19, 2016 Press Release"). The September 19, 2016 Press Release stated in relevant part:

> **TherapeuticsMD Announces FDA Acceptance of New Drug Application (NDA) and Prescription Drug User Fee Act (PDUFA) Date for Yuvvexy™ (TX-004HR)**
>
> *- PDUFA target action date of May 7, 2017 -*
>
> **BOCA RATON, Florida, Sept. 19, 2016** – TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, today announced the acceptance of the NDA for Yuvvexy, the conditionally-approved trade name for TX-004HR, by the U.S. Food and Drug Administration (FDA). Yuvvexy is an investigational bio-identical 17β-estradiol vaginal softgel capsule for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar vaginal atrophy (VVA) in postmenopausal women.
>
> The NDA acceptance by the FDA in its 74-day letter indicates that the application is sufficiently complete to permit a substantive review. The PDUFA target action date for the completion of the FDA's review is May 7, 2017.
>
> "The acceptance of the NDA for Yuvvexy is an important milestone for TherapeuticsMD as we pursue our goal to provide women with novel healthcare solutions that address their needs throughout life," said TherapeuticsMD CEO Robert G. Finizio. "If approved, Yuvvexy has the potential to be a highly differentiated treatment option for the 32 million postmenopausal women in the United States who suffer from symptoms of VVA. Yuvvexy is the first product candidate from our pipeline of novel hormone therapies in development to address women's unmet health needs."
>
> ***The 505(b)(2) NDA submission for Yuvvexy is supported by the complete Yuvvexy clinical program, including positive results of the phase 3 Rejoice Trial, which evaluated the effect of three doses of Yuvvexy (4 mcg, 10 mcg and 25 mcg) compared to placebo from baseline to week 12.*** The results demonstrated statistically significant and clinically meaningful improvements in dyspareunia, a co-primary endpoint, and vaginal dryness, a secondary endpoint. Statistically significant results were seen as early as two weeks of treatment. The NDA includes all three doses of Yuvvexy that were evaluated in the Rejoice Trial.

Emphasis added.

32. On November 3, 2016, TherapeuticsMD issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's third quarter 2016 fiscal results for the period ended September 30, 2016 ("November 3, 2016 Press Release"). The November 3, 2016 Press Release stated, in relevant part:

**TherapeuticsMD Announces Third Quarter 2016 Financial Results**

*- Topline phase 3 data for TX-001HR Replenish Trial on track for fourth quarter of 2016 -*

*- TX-004HR PDUFA target action date of May 7, 2017 -*

**BOCA RATON, Fla.** – Nov. 3, 2016 – TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, today announced its third quarter financial results for the quarter ended September 30, 2016.

**Third Quarter and Recent Developments**

- ***Announced acceptance of a New Drug Application (NDA) by the U.S. Food and Drug Administration (FDA) for TX-004HR (conditionally-approved trade name Yuvvexy™), the company's investigational applicator-free estradiol vaginal softgel capsule for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar and vaginal atrophy (VVA) due to menopause. The NDA is supported by the complete TX-004HR clinical program, including positive phase 3 results with all three doses of TX-004HR (4 mcg, 10 mcg and 25 mcg) that were evaluated in the Rejoice Trial.*** The FDA's Prescription Drug User Fee Act (PDUFA) target action date for the NDA is May 7, 2017. . .

***"We are making excellent progress this year advancing our pipeline and enhancing our commercial capabilities focused on women's health. During the quarter, we successfully completed the submission of our NDA for TX-004HR as a novel treatment for moderate to severe dyspareunia, a symptom of VVA due to menopause, and we continued ongoing pre-commercialization activities for this important product," said TherapeuticsMD CEO Robert G. Finizio***. "We now eagerly await the topline data from our Replenish Trial for TX-001HR in the fourth quarter of 2016, our second novel hormone therapy program, which, if approved, would be the first and only FDA-approved bio-identical combination of estradiol and progesterone for the treatment of moderate-to-severe vasomotor symptoms due to menopause."

Emphasis added.

33. Also on November 3, 2016, the Company held an earnings conference call with analysts to discuss the financial results of its third fiscal quarter of 2016. During this conference call, Defendant Finizio stated, in relevant part:

> On July 7, we submitted our new drug application, also known as an NDA, for TX-004HR or Yuvvexy, our conditionally-approved trade name. ***On September 19, our NDA was officially accepted by the FDA and we have received a PDUFA target action date of May 7, 2017. The NDA is based upon the complete results of TX-004HR clinical program including our positive pivotal Phase 3 Rejoice Trial.***

Emphasis added.

34. On November 4, 2016, the Company filed its Form 10-Q with the SEC for the period ended September 30, 2016 ("3Q2016 Form 10-Q"). The 3Q2016 Form 10-Q reiterated Defendants' statements concerning the submission of the NDA for TX-004HR and additionally stated, in relevant part:

> We submitted the NDA for TX-004HR with the FDA on July 7, 2016. The FDA determined that the NDA is sufficiently complete to permit a substantive review and accepted the NDA for filing. The PDUFA target action date for the completion of the FDA's review is May 7, 2017. ***The NDA submission was supported by the complete TX-004HR clinical program, including positive results of the recently completed phase 3 REJOICE Trial.*** The NDA submission included all three doses of TX-004HR (4 mcg, 10 mcg and 25 mcg) that were evaluated in the REJOICE Trial. If approved, the 4 mcg formulation would represent a lower effective dose than the currently available VVA therapies approved by the FDA.

Emphasis added.

35. The 3Q2016 Form 10-Q was signed by Defendant Finizio and also contained a SOX certification signed by him stating that all fraud by the Company's management had been disclosed.

36. On February 23, 2017, TherapeuticsMD issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the Company's fourth quarter 2016

and full-year fiscal results for the periods ended December 31, 2016 ("February 23, 2017 Press Release"). The February 23, 2017 Press Release stated in relevant part:

> **TherapeuticsMD Announces Fourth Quarter and Full-Year 2016 Financial Results**
>
> *– Pipeline of two late-stage product candidates advancing towards commercialization, with launch of TX-004HR expected in fourth quarter 2017 pending regulatory approval –*
>
> *– Management to host conference call today at 8:00 a.m. EST –*
>
> **BOCA RATON, Fla.** – February 23, 2017 – TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, today announced its fourth quarter and full-year financial results for 2016.
>
> 2016 and Recent Developments
>
> * * *
>
> - Submitted an NDA for TX-004HR, the company's applicator-free estradiol vaginal softgel capsule drug candidate for the treatment of moderate-to-severe vaginal pain during sexual intercourse (dyspareunia), a symptom of vulvar and vaginal atrophy (VVA) due to menopause. ***The NDA is supported by the complete TX-004HR clinical program, including positive results from all three doses of TX-004HR (4 mcg, 10 mcg and 25 mcg) that were evaluated in the phase 3 Rejoice Trial.*** The FDA's Prescription Drug User Fee Act (PDUFA) target action date for the NDA is May 7, 2017.
>
> * * *
>
> "***During 2016, we made significant advancements with our two late-stage pipeline candidates while we pursued our goal to bring new healthcare solutions to women to help manage their menopause symptoms," said TherapeuticsMD CEO Robert G. Finizio. "As we look forward to 2017, we are planning the launch of TX-004HR, pending regulatory approval, as a highly differentiated new treatment for moderate-to-severe dyspareunia, a symptom of VVA due to menopause.*** We also intend to file an NDA for TX-001HR, which, if approved, would be the first and only FDA-approved bio-identical combination of estradiol and progesterone for the treatment of moderate-to-severe vasomotor symptoms due to menopause."

Emphasis added.

37. On February 28, 2017, the Company filed its Form 10-K with the SEC ("2016 Form 10-K"). The 2016 Form 10-K reiterated Defendants statements concerning the submission of the NDA for TX-004HR and also stated, in relevant part:

> We submitted the NDA for TX-004HR with the FDA on July 7, 2016. The FDA determined that the NDA is sufficiently complete to permit a substantive review and accepted the NDA for filing. The PDUFA target action date for the completion of the FDA's review is May 7, 2017. ***The NDA submission was supported by the complete TX-004HR clinical program, including positive results of the phase 3 REJOICE Trial.*** The NDA submission included all three doses of TX-004HR (4 mcg, 10 mcg and 25 mcg) that were evaluated in the REJOICE Trial. If approved, the 4 mcg formulation would represent a lower effective dose than the currently available VVA therapies approved by the FDA.

Emphasis added.

38. The 2016 Form 10-K was signed by Defendant Finizio and also contained a SOX certification signed by him stating that all fraud by the Company's management had been disclosed.

39. The statements in paragraphs 25-38 above were materially false and misleading above were false and/or misleading as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (i) the Company's NDA submission for TX-004HR was deficient; (ii) the Company's NDA submission for TX-004HR was not supported by the complete TX-004HR clinical program and/or the clinical program was deficient; (iii) the Company's deficient NDA would likely cause a delay of the FDA's potential approval of the TX-0004HR NDA; and (iv) as a result of the foregoing, Defendants' statements about TherapeuticsMD's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## C. THE TRUTH EMERGES

40. Before the market opened on April 10, 2017, the Company issued a press release ("April 2017 Press Release"), also attached as exhibit 99.1 to a Form 8-K filed with the SEC on the same day. The April 2017 Press Release stated in relevant part:

> TherapeuticsMD, Inc. (NYSE MKT: TXMD), an innovative women's healthcare company, today announced that, on April 7, 2017, the Company received a letter ***from the U.S. Food and Drug Administration (FDA) stating that, as part of the FDA's ongoing review of the Company's new drug application (NDA) for TX-004HR***, the Company's applicator-free vaginal estradiol softgel drug candidate for the treatment of moderate to severe dyspareunia (vaginal pain during sexual intercourse), a symptom of vulvar and vaginal atrophy (VVA), in post-menopausal women, ***the FDA has identified deficiencies that preclude discussion of labeling and postmarketing requirements/commitments at this time***. The letter states that the notification does not reflect a final decision on the information under review.
>
> ***The letter does not specify the deficiencies identified by the FDA and at this time the Company is not aware of the nature of the deficiencies.*** The Company intends to work with the FDA to understand the nature of the deficiencies and resolve them as quickly as possible.
>
> ***The FDA previously set a target action date under the Prescription Drug User Fee Act (PDUFA) of May 7, 2017 to complete the FDA's review of the NDA and had communicated to the Company the FDA's target date of April 9, 2017 for communicating to the Company proposed labeling and/or postmarketing requirements/commitments in accordance with FDA's PDUFA Reauthorization Performance Goals And Procedures – Fiscal Years 2013 Through 2017***.

Emphasis added.

41. The Form 8-K, to which the April 2017 Press Release was attached, additionally stated:

> Item 8.01. Other Events.
>
> On July 7, 2016, TherapeuticsMD, Inc., a Nevada corporation (the "Company"), submitted to the U.S. Food and Drug Administration (the "FDA") a New Drug Application (the "NDA") under Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act for three doses of TX-004HR, the Company's applicator-free vaginal estradiol softgel drug candidate for the treatment of moderate to severe dyspareunia (vaginal pain during sexual intercourse), a symptom of vulvar and vaginal atrophy (VVA), in post-menopausal women. The submission was accepted by the FDA and

> the FDA set a target action date under the Prescription Drug User Fee Act ("PDUFA") of May 7, 2017 to complete the FDA's review of the NDA. ***In a letter dated September 19, 2016, the FDA notified the Company of the FDA's target date of April 9, 2017 for communicating to the Company proposed labeling and/or postmarketing requirements/commitments in accordance with FDA's PDUFA Reauthorization Performance Goals And Procedures – Fiscal Years 2013 Through 2017.***
>
> ***On April 7, 2017, the Company received a letter from the FDA (the "Letter") stating that, as part of its ongoing review of the NDA, the FDA has identified deficiencies that preclude discussion of labeling and postmarketing requirements/commitments at this time. The Letter states that it does not reflect a final decision on the information under review. The Letter does not specify the deficiencies identified by the FDA and at this time the Company is not aware of the nature of the deficiencies.*** The Company intends to work with the FDA to understand the nature of the deficiencies and resolve them as quickly as possible.
>
> On April 10, the Company issued a press release (the "Press Release") announcing its receipt of the Letter. Copies of the Press Release and the Letter are attached hereto as Exhibits 99.1 and 99.2, respectively, and are incorporated herein by reference.

Emphasis added.

42. As a result of this news, TherapeuticsMD common stock declined $1.50 per share from a closing price of $7.70 per share on April 10, 2017, to close at $6.20 per share on April 10, 2017, a drop of approximately 19.48%.

## D. ADDITIONAL SCIENTER ALLEGATIONS

43. As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding TherapeuticsMD, their control over, and/or receipt and/or

modification of TherapeuticsMD's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning TherapeuticsMD, participated in the fraudulent scheme alleged herein.

## E. LOSS CAUSATION AND ECONOMIC LOSS

44. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about TherapeuticsMD's misconduct was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in TherapeuticsMD's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

45. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of TherapeuticsMD's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially

false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing TherapeuticsMD's common stock to be artificially inflated. Plaintiff and other Class members purchased TherapeuticsMD's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

**F. PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET**

46. At all relevant times, the market for TherapeuticsMD securities was an efficient market for the following reasons, among others:

(a) TherapeuticsMD's common stock met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient market;

(b) During the Class Period, TherapeuticsMD securities were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, TherapeuticsMD filed with the SEC periodic public reports during the Class Period;

(d) TherapeuticsMD regularly communicated with public investors via established market communication mechanisms;

(e) TherapeuticsMD was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about TherapeuticsMD was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

47. As a result of the foregoing, the market for TherapeuticsMD securities promptly digested current information regarding TherapeuticsMD from all publicly available sources and

reflected such information in TherapeuticsMD's stock price. Under these circumstances, all purchasers of TherapeuticsMD common stock during the Class Period suffered similar injury through their purchase of TherapeuticsMD's common stock at artificially inflated prices, and a presumption of reliance applies.

48. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the adequacy of the Company's NDA for TX-004HR and timeline for potential approval of the NDA when deciding whether to purchase and/or sell stock in TherapeuticsMD.

## G. NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

49. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

50. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

51. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was

authorized and/or approved by an executive officer of TherapeuticsMD who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired TherapeuticsMD common stock on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

53. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, TherapeuticsMD securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by TherapeuticsMD or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of February 21, 2017, TherapeuticsMD had approximately 197.5 million common shares outstanding. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

54. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

55. Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b) whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c) whether the price of TherapeuticsMD common stock during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

57. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

***Violation of Section 10(b) and Rule 10b-5 Against All Defendants***

58. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase TherapeuticsMD common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

60. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for TherapeuticsMD securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

61. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of TherapeuticsMD as specified herein.

62. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of TherapeuticsMD's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about TherapeuticsMD and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of TherapeuticsMD common stock during the Class Period.

63. Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

64. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing TherapeuticsMD's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

65. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of TherapeuticsMD's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of TherapeuticsMD' publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired TherapeuticsMD common stock during the Class Period at artificially high prices and were or will be damaged thereby.

66. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding TherapeuticsMD's financial

results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their TherapeuticsMD common stock, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

67. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

68. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

69. This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

**COUNT II**

***The Individual Defendants Violated Section 20(a) of the Exchange Act***

70. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71. The Individual Defendants acted as controlling persons of TherapeuticsMD within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided

with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

72. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

73. As set forth above, TherapeuticsMD, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

74. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

75. This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b) Awarding compensatory damages in favor of Plaintiff and the other members

of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial.

Dated: April 17, 2017

**Cullin O'Brien Law, P.A.**

/s/ Cullin O'Brien
Cullin O'Brien (Florida Bar Number: 0597341)
Email: cullin@cullinobrienlaw.com
6541 NE 21st Way
Ft. Lauderdale, Florida 33308
Telephone: (561) 676-6370
Facsimile: (561) 320-0285

*Liaison Counsel*

-and-

**LEVI & KORSINSKY LLP**
Nicholas I. Porritt*
Adam M. Apton*
Email: nporritt@zlk.com
Email: aapton@zlk.com
1101 30th Street, NW
Suite 115
Washington, DC 20007
Telephone: (202) 524-4294
Facsimile: (212) 363-7171

(*Pro hac vices forthcoming*)
*Attorneys for Joseph Paoli and Proposed Lead Counsel for the Class*